IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VERONICA L.,[1]                                          Case No. 1:25-cv-00506-JR

      Plaintiff,                                       OPINION AND ORDER

      v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

RUSSO, Magistrate Judge:

Plaintiff Veronica L. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits and Title XVI Social Security Income under the Social Security Act. For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for the immediate payment of benefits from April 5, 2017, through November 30, 2024.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in January 1970, plaintiff alleges disability beginning April 5, 2017, due to "polyarthralgia, left and right epicondylitis, right elbow carpal tunnel syndrome, right ulnar neuropathy, anxiety, depression, severe nerve pain, [and] hyperthyroidism." Tr. 250, 257, 274. Her applications were denied initially and upon reconsideration. On January 19, 2022, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified. Tr. 34-63. On February 23, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-28.

Plaintiff timely filed an appeal and, on February 2, 2024, this Court reversed the ALJ's decision and remanded the case for further proceedings. Tr. 960-72; *see also* Tr. 974-76 (Appeals Council remand order). In particular, the Court found that the ALJ erred by "improperly discredit[ing] the opinions of Anjanette Devine, FNP, Paulette Hawthorne, MSW, and Darcy Butcher, FNP." Tr. 968-69.

On November 5, 2024, a second ALJ hearing was held, wherein plaintiff once again was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 903-31. On December 2, 2024, the ALJ issued a partially favorable decision finding plaintiff disabled as of December 1, 2024, but not before.[2] Tr. 878-93.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 880. At step two, the ALJ determined the following impairments were medically determinable and severe: "lumbar

---

[2] Because plaintiff's insured status lapsed on September 30, 2021, the ALJ's award did not include Title II Disability Insurance Benefits. Tr. 880, 892.

Page 2 – OPINION AND ORDER

degenerative disc disease; cervical degenerative disc disease; obesity; left shoulder osteoarthritis; right medial epicondylitis; major depressive disorder; unspecified anxiety disorder; benign essential tremor; and right carpal tunnel syndrome." Tr. 880-81. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 882.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity to perform light work as defined in 20 C.F.R. § 416.967(b) and 416.967(b) except

> with no more than frequent fingering, handling, and operation of hand controls bilaterally; no overhead reaching with the left non-dominant upper extremity; occasional climbing of ramps or stairs but no climbing of ladders, ropes, or scaffolds; occasional stooping, kneeling, and crouching but no crawling; no work at unprotected heights or around moving mechanical parts; no operation of a motor vehicle. She can understand, remember, and carry out simple, routine, and repetitive tasks but not at a production rate pace, such as assembly line or timed work; has the judgment to make simple work-related decisions; can occasionally interact with supervisors and coworkers; can work in proximity to others but would work alone, not on a team, and would work with objects not people; and she would not have any public interaction.

Tr. 884.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 890. At step five, the ALJ concluded there were a significant number of jobs in the national economy that plaintiff could perform prior to December 1, 2024, despite her impairments, such as router, collator operator, and merchandise marker. Tr. 891-92. However, "[b]eginning on December 1, 2024, the date [plaintiff's] age category changed . . . there are no jobs that exist in significant numbers in the national economy that [she] could perform" and "a finding of 'disabled' is reached by direct application of Medical-Vocational Rule 202.04." Tr. 892.

Page 3 – OPINION AND ORDER

**DISCUSSION**

Plaintiff argues "the ALJ erred in articulating his evaluation of the persuasiveness of the medical opinions of" the previously wrongfully rejected sources – i.e., Hawthorne, Devine, and Butcher – as well as "Susanne Duncan, FNP[;] Crystal Novelozo, FNP; and Susan Sparling, MD." Pl.'s Opening Br. 3-4 (doc. 14).

## I.     Medical Opinion Evidence

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are." *Kevin R. H. v. Saul*, 2021 WL 4330860, at \*4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

### A.     Ms. Hawthorne

In April 2020, Ms. Hawthorne became plaintiff's mental health provider, seeing plaintiff approximately bi-weekly for treatment of her psychological symptoms. Tr. 647. On December 30, 2020, Ms. Hawthorne provided a written statement indicating that plaintiff suffered from generalized anxiety disorder and possibly borderline personality disorder. *Id.* She stated further that plaintiff's social anxiety was severe and, despite being "taught coping skills and problem

Page 4 – OPINION AND ORDER

solving skills to address [mental health] symptoms," plaintiff's prognosis remained "fair" and her response "varied." *Id.*

In a corresponding "Mental Abilities and Aptitudes Needed to do Unskilled Work" form, Ms. Hawthorne checked boxes reflecting plaintiff was "unable to meet competitive standards" in the following categories: work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; interact appropriately with the general public; and use public transportation. Tr. 648-50. Ms. Hawthorne also opined plaintiff was "seriously limited, but not precluded"[3] in regard to: maintaining regular attendance and being punctual within customary, usually strict tolerances; making simple work-related decisions; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in a routine work setting; maintaining socially appropriate behavior; and travelling in unfamiliar places. *Id*. Ms. Hawthorne concluded that plaintiff's limitations had persisted since May 6, 2020. Tr. 652.

On January 10, 2022, Ms. Hawthorne provided an updated medical source statement. Tr. 869-74. Ms. Hawthorne began by reiterating plaintiff's diagnoses of generalized anxiety and borderline personality disorder, and indicating that "1-3 yrs. [of] intensive outpatient [mental health] treatment" would help ameliorate plaintiff's symptoms but only if she "is able to follow treatment guidelines [but the] nature of [her] illness interferes w[ith] compliance." Tr. 869.

---

[3] "Unable to meet competitive standards" is defined as "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting (e.g., distracted from job activity . . . 21 to 40 percent of the workday or work week)." Tr. 648. And "similarly limited, but not precluded" means "ability to function in this area is seriously limited and less than satisfactory (e.g., distracted from job activity . . . 11 to 20 percent of workday or work week)." *Id.*

Plaintiff's signs and symptoms included: anhedonia or pervasive loss of interest in almost all activities; decreased energy; impairment in impulse control; generalized persistent anxiety; pathological dependence, passivity, or aggressivity; persistent disturbances of mood or affect; persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; intense and unstable interpersonal relationships and impulsive and damaging behavior; emotional liability; vigilance and scanning; sleep disturbance; and a history of multiple physical symptoms. Tr. 870.

In a similarly updated "Mental Abilities and Aptitudes Needed to do Unskilled Work" form, Ms. Hawthorne checked boxes reflecting plaintiff was "unable to meet competitive standards" in the following categories: maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; deal with normal work stress; interact appropriately with the general public; and travel in unfamiliar places. Tr. 871-72. Additionally, Ms. Hawthorne specified plaintiff was "seriously limited, but not precluded" from: maintaining attention for two hour segments; responding appropriately to changes in a routine work setting; and maintaining socially appropriate behavior. *Id.*

In the narrative portion of this form, Ms. Hawthorne explained that plaintiff's personality disorder created "unstable personal relationships, inability to maintain normal standards of

Page 6 – OPINION AND ORDER

behavior in a workplace, intense mood instability, [and] difficulty controlling emotions." Tr. 872. It also exacerbated plaintiff's other impairments by "impacting[ing] [the] feeling of chronic pain, respiratory and cardiac symptoms." *Id.* Finally, Ms. Hawthorne opined that plaintiff's symptoms would cause her to miss "more than four days per month" of work and had persisted since beginning treatment in April 2020. Tr. 873-74.

The ALJ found Ms. Hawthorne's opinions "partially persuasive": "She supported her opinions with a detailed list of [plaintiff's] symptoms [but to] the extent her opinions indicate greater than moderate mental limitations [as] found herein, they are inconsistent with organized thoughts, fair insight and judgment, appropriate mood and affect without pressured speech or suicidal ideation." Tr. 890.

An independent review of the record reveals that the ALJ's consideration of the supportability and consistency of Ms. Hawthorne's opinions, along with the additional sub-factors, is not supported by substantial evidence. Initially, while the record does contain rote observations of plaintiff being oriented to time, place, person and situation, with an appropriate mood and affect, other portions of the record (including Ms. Hawthorne's own chart notes) suggests that plaintiff experienced significant mental health symptoms. *See, e.g.*, Tr. 661-706; *see also* Tr. 632 (March 2020 "Psychodiagnostic Evaluation" with Gregory Cole, Ph.D., noting that, although plaintiff presented with a congruent affect, an engaged and cooperative attitude, and organized thought processing and content, she reported "feeling down on and off for 2 years," "some feelings of hopelessness and some suicidal ideation," and problems with anger, anxiety, and diminished energy and concentration).

Stated differently, nothing in plaintiff's routine mental status exams contravene Ms. Hawthorne's opinion that plaintiff would experience significant social, concentration, and

Page 7 – OPINION AND ORDER

persistence limitations in a work setting. *See Michael T. v. Comm'r of Soc. Sec. Admin.*, 2025 WL 999970, \*6 (D. Or. Apr. 3, 2025) ("Dr. McDuffee's observations of plaintiff – e.g., that 'his hygiene and grooming were good, and [he] was otherwise pleasant and cooperative' – were a part of and factored into her medical opinion, such that they in no way bely the assessed workplace limitations"); *see also Wally H. v. Comm'r of Soc. Sec. Admin.,* 2023 WL 7040149, \* (D. Or. Oct. 26, 2023) (routine examination findings "do not constitute substantial evidence [where] the ALJ did not explain how the claimant's 'routine findings' were inconsistent with the assessed limitations") (citation and internal quotations omitted); *Leza v. Kijakazi,* 2022 WL 819782, \*1 (9th Cir. Mar. 17, 2022) (where the record documented persistent symptoms, the claimant's "normal" findings did not create an inconsistency sufficient to reject "the treating physicians' recommended restrictions"). As such, the ALJ failed to provide a legally sufficient reason, supported by substantial evidence, for discounting Ms. Hawthorne's opinions.

**B.      Ms. Devine, Ms. Butcher, Ms. Novelozo, and Dr. Sparling**

In February 2017, Ms. Devine became plaintiff's primary care provider, largely for treatment of her pain symptoms. Tr. 500, 865. Although plaintiff sought somewhat intermittent care between 2017 and 2020, she saw Ms. Devine more frequently (approximately once per month) starting in 2021. Tr. 865. In June 2021, Ms. Devine completed a "Physical Residual Function Capacity Report," which listed plaintiff's diagnoses as "cervicalgia, carpal tunnel syndrome, [and] essential tremor." Tr. 794. In relevant part, Ms. Devine opined that plaintiff could lift/carry less than 10 pounds occasionally, stand/walk for less than two hours in an eight-hour workday, and sit for less than six hours in an eight-hour workday. Tr. 793. Ms. Devine then listed plaintiff's prognosis as "guarded" and 2014 as her "date of disability onset." Tr. 794.

In November 2021, Ms. Butcher, a provider at the same clinic as Ms. Devine, treated plaintiff because she was "upset about her care from her PCP" and completed a "Physical Residual Function Capacity Report." Tr. 741-49. Ms. Butcher listed plaintiff's diagnoses as "chronic pain," which had existed since "2014/2015ish." Tr. 749. She opined that plaintiff could lift/carry less than 10 pounds occasionally, stand/walk for less than two hours in an eight-hour workday, sit for less than six hours in an eight-hour workday, and never climb, balance, stoop, kneel, crouch, or crawl. Tr. 748.

In January 2022, Ms. Devine completed a "Physical Medical Source Statement," describing plaintiff's diagnoses as "left ventricular systolic dysfunction; hypertension; hypothyroidism; moderate acromioclavicular arthritis; severe cervical disc arthritis; [and] tremor." Tr. 865-68. She characterized plaintiff's symptoms as "chronic" pain in the neck, left shoulder, and bilateral hips and knees, and severe anxiety and depression. *Id.* This pain was "constant," "throbbing," "associated with headaches," and "aggravated by positioning." *Id.* As far as "clinical findings and objective signs," Ms. Devine detailed the following: "(1) nuclear medicine stress test 5/10/209 shows mildly reduced left ventricular systolic function; (2) x-rays [of left] shoulder 7/13/2021 shows moderate acromioclavicular arthritis – x-ray [of] cervical spine 7/13/2021 shows moderate disc arthritis and C5-6 and severe disc arthritis at C6-7; (3) depression screening shows severe depression and anxiety screening shows severe anxiety; [and] (4) moderate to severe bilateral hand tremors noted since June 2021." *Id.*

In terms of functional abilities, Ms. Devine opined that plaintiff could sit for 30 minutes at one time before needing to change positions and for less than two hours total in an eight-hour workday, and stand/walk for 10 minutes at one time before needing to sit down and for less than two hours total in an eight-hour workday. Tr. 866. Plaintiff would need to shift positions at will

Page 9 – OPINION AND ORDER

and take several unscheduled breaks during a working day due to pain and fatigue. *Id.* Finally, she indicated that plaintiff would be off task "25% or more" of a typical workday, was "incapable of even 'low stress' work," and would miss "more than four days per month" of work due to her symptoms, which had persisted since 2014. Tr. 868.

In May 2022, February 2023, and July 2023, Ms. Devine completed additional physical functional capacity assessments, in which she listed essentially the same conditions and limitations (or indicated a greater level of restriction). Tr. 1199-1206, 1230-31, 1252-53. In January 2024, Ms. Novelozo, another provider at the same clinic as Ms. Devine and Ms. Butcher, completed a physical functional capacity assessment that mirrored Ms. Devine's July 2023 report. Tr. 1175-76. Similarly, in July 2024, Dr. Sparling completed a physical functional capacity assessment that echoed those of Ms. Devine and Ms. Novelozo. Tr. 1147-48.

The ALJ resolved the opinions of Ms. Devine, Ms. Butcher, Ms. Novelozo, and Dr. Sparling were "partially persuasive":

> While the record supports some limitations to [plaintiff's] ability to do work-related activities, it does not support the degree of restriction that these treatment providers opine. Their opinions are not supported by their examinations showing normal balance and gait, no edema, the ability to heel and toe walk normally, and full range of motion of the cervical spine without neurological or musculoskeletal deficits in the upper extremities. The portions regarding the ability to sit for six hours; never crawl; no exposure to hazards; occasional climb stairs but never ladders; occasionally bend or stoop; and frequently handle and finger are consistent with reduced range of motion of the cervical spine and shoulders, degenerative changes of the left shoulder, carpal tunnel syndrome, and a bilateral tremor. However, the remaining portions are inconsistent with improvement following conservative treatment, full cervical range of motion, the ability to squat and rise from that position, and [plaintiff's] notations of daily activities.

Tr. 890 (internal citations omitted).

As addressed in Section I(A), the type of routine examination findings cited by the ALJ are insufficient to disregard clinical signs and signals, especially where, as here, myriad forms of

Page 10 – OPINION AND ORDER

objective medical evidence corroborate plaintiff's claims. *See* Tr. 852-56, 858-59 (plaintiff's imaging studies); *see also Morgan v. Colvin*, 2013 WL 6074119, *7 (D. Or. Nov. 13, 2013) ("rote observations recorded in plaintiff's medical record" that she "had normal muscle tone upon examination [and was] 'healthy-appearing' " had "no bearing on whether she suffers from pain, fatigue, or weakness"); *Dahl v. Comm'r of Soc. Sec.*, 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (even "mild degenerative disc disease can have disabling effects") (collecting cases). Moreover, plaintiff's obesity is denoted as a limiting factor as it relates to her pain and mobility. *See, e.g.*, Tr. 807-08, 1165-66. The ALJ seemingly wholly overlooked this evidence in discussing the opinions of Ms. Devine, Ms. Butcher, Ms. Novelozo, and Dr. Sparling.

And, while the record demonstrates that plaintiff's medications have been helpful and there has been some waxing and waning of symptoms, it also shows that plaintiff continued to suffer with widespread body pain despite regular treatment. *Compare* Tr. 495, 611, 614 *with* Tr. 637, 733, 745, 752-53; *see also Benton v. Comm'r of Soc. Sec. Admin.*, 2022 WL 2071980, *4 (D. Ariz. June 9, 2022) ("[a]s the Ninth Circuit has previously discussed, the presence of waxing and waning of symptoms during the treatment period do not necessarily indicate an ability to maintain employment, nor do some symptoms improving negate a treating provider's opinion"). In fact, despite the ALJ characterizing her treatment as "conservative," plaintiff has undergone myriad modalities – including opioid pain medication, physical therapy, chiropractic care, acupuncture, and injections – but still experienced persistent symptoms. *See, e.g.*, Tr. 414, 733, 737, 818, 824, 827, 839, 859, 862; *see also Bostock v. Berryhill*, 2018 WL 5906174, *5 (C.D. Cal. Nov. 9, 2018) ("cumulative treatment, including narcotic pain medication and multiple epidural shots, [can] not [be deemed] conservative") (collecting cases).

Page 11 – OPINION AND ORDER

Nothing in the record belies the aforementioned evidence or otherwise suggests plaintiff's neck, shoulder, or heart impairments markedly improved or that she was able to sustain an increased activity level during the adjudication period. *Cf. Christina L. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4547345, *3 (D. Or. Sept. 29, 2022) ("degenerative disc disease is a condition that, by definition, progressively worsen over time") (citation and internal quotations omitted). Separately, although not dispositive, it is troubling that the ALJ lumped several medical opinions together (especially the specific limitations proffered by Ms. Devine) and then essentially rejected every piece of evidence that was favorable to plaintiff's physical claim of disability. The ALJ erred as to this issue.

### C.    Ms. Duncan

On September 30, 2024, Ms. Duncan provided a "Treating Source Statement" at the request of plaintiff's attorney. Tr. 1317-21. Ms. Duncan initially noted she had only "seen [plaintiff] once but she has been a patient of the clinic for more than ten years." Tr. 1317. Ms. Duncan then listed plaintiff's diagnoses as "prediabetes, hypothyroidism, essential tremor, neck pain, carpal tunnel syndrome, morbid obesity, pain of elbow, poor sleep, anxiety, [and] unsteady gait/balance." *Id.* As far as treatment, Ms. Duncan indicated that plaintiff's records reflected "x-rays, CT scan, chiropractic [care], acupuncture, [and] medication." Tr. 1319. Ms. Duncan further indicated that plaintiff's "CT scan cervical spine 4/5/2019" established her neck pain symptoms. Tr. 1318.

In the corresponding checkbox form, Ms. Duncan opined plaintiff could: sit and stand/walk for sixty minutes at a time; sit and stand/walk for up to four hours each in an eight-hour workday; lift/carry ten or less pounds occasionally; and never lift/carry more than ten pounds. Tr. 1319-20. She also opined that plaintiff would "need a job which permits shifting positions at will from

sitting, standing or walking." Tr. 1319. Lastly, she remarked that the aforementioned limitations have been present since 2014. Tr. 1321.

The ALJ neither addressed nor acknowledged this evidence in finding plaintiff not disabled prior to December 1, 2024.[4] As such, the ALJ committed reversible error regarding Ms. Duncan's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1037 (9th Cir. 2007) (reversing the ALJ's decision where "the ALJ completely ignored the medical opinions of [the claimant's] two primary treating physicians, who expressly corroborated his alleged pain and limitations").

## II.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir.

---

[4] The Commissioner does not contend Ms. Duncan's opinion is irrelevant or not probative. Rather, the Commissioner asserts that ALJ adequately considered this evidence by broadly referencing it as an exhibit: "After the ALJ considered state agency findings and the opinions of Craig Davis, M.D., and [Hawthorne], the ALJ considered several treatment providers' opinions together— including Nurse Duncan's, which appeared at Exhibit 24F and which the ALJ cited. So while the ALJ did not identify Nurse Duncan by name, he plainly cited the opinion and evaluated its persuasiveness." Def.'s Resp. Br. 3 (doc. 16) (citations omitted). However, as the Court previously explained, these circumstances prevent the Court from concluding that substantial evidence supports the ALJ's decision. *Cf.* Tr. 969 ("the agency's path cannot be reasonably discerned as the ALJ provides no reasoning for the conclusory statement [that a medical opinion is unpersuasive and the Commissioner's reliance on the ALJ's other reasoning and] numerous records to provide evidence of that fact . . . amounts to nothing more than a post hoc rationalization"); *see also* Pl.'s Reply Br. 2-3 (doc. 17) ("merely citing an exhibit where a medical source's opinion appears in the case record does not meet the regulatory articulation requirements," especially because "Ms. Duncan's opinion is not identical to those provided by Ms. Butcher, Ms. Devine, Dr. Sparling, and Ms. Novelozo") (citations omitted).

2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error in relation to the medical opinions of Ms. Hawthorne, Ms. Devine, Ms. Butcher, Ms. Novelozo, Ms. Duncan, and Dr. Sparling. The adjudication period has now lasted nearly ten years, resulting in a record spanning approximately 1,400 pages and two ALJ hearings/decisions, two Appeals Council reviews, and two federal court appeals. By any measure, the record in this case has been fully developed and no additional proceedings are necessary. Plaintiff is currently fifty-six years old, has no past relevant work experience, last engaged in substantial gainful activity in 2017, and was adjudicated as disabled as of December 1, 2024.

Further, if the opinions of Ms. Hawthorne and Ms. Devine were credited as true, the ALJ would be required to make a finding of disability on remand. That is, the VE testified that an individual who was limited to sedentary work, no public contact, and simple, routine tasks/instructions would not be competitively employable. Tr. 927-28. Likewise, the VE testified that being "off task 10% or more, spread out over the workday" or missing "more than one day per month, on an ongoing basis . . . would rule out competitive employment." Tr. 928.

Finally, the record, as a whole, does not create serious doubt plaintiff is disabled from the alleged onset date through November 30, 2024. Indeed, the Commissioner does not address this element. *See generally* Def.'s Resp. Br. (doc. 16); *cf. David T. v. Comm'r Soc. Sec. Admin.*, 2025 WL 3514712, *10 (D. Or. Dec. 8, 2025) ("there is simply no utility in remanding for a third time to allow another ALJ to ask another VE the same questions. That it has taken a decade to resolve Plaintiff's applications for disability benefits is an unfortunate commentary on our entire system . . . Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication") (citations and internal quotations omitted).

In sum, plaintiff applied for benefits more than seven years ago, and there are no outstanding issues given the opinions of plaintiff's providers, especially when viewed in conjunction with the VE's testimony. As such, the appropriate remedy is to remand this case for the immediate payment of benefits as of the alleged onset date.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for the immediate payment of benefits from April 5, 2017, through November 30, 2024.

IT IS SO ORDERED.

DATED this 24th day of April, 2026.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Page 15 – OPINION AND ORDER